# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **V.P., V.A.-B., A.B., and S.C.**

**No. 25-559** (Monongalia County CC-31-2024-JA-151, CC-31-2024-JA-152, CC-31-2024-JA-153, and CC-31-2024-JA-154)

## MEMORANDUM DECISION

Petitioner Father and Custodian W.B.[1] appeals the Circuit Court of Monongalia County's August 8, 2025, order terminating his parental and custodial rights to V.P., V.A.-B., A.B., and S.C., arguing that the circuit court erred in terminating his rights instead of imposing a less restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in August 2024 alleging that the petitioner sexually abused his former stepdaughter V.A.-B.,[3] committed acts of domestic violence against the mother in the children's presence, and used inappropriate physical punishment on the children. The DHS alleged that the children participated in Child Advocacy Center ("CAC") forensic interviews, during which then-sixteen-year-old V.A.-B. disclosed that the sexual abuse began in 2020 and continued until the petitioner left the home in October 2023. The DHS further alleged that, during the CAC interviews, both V.A.-B and then-thirteen-year-old V.P. reported that the petitioner locked V.A.-B. in a room with him on multiple occasions and touched the child inappropriately both in the locked room and in shared living spaces. According to the DHS, both children also disclosed that the petitioner used excessive physical punishment, including hitting them on the head and forcing them to do exercises while he hit them, and engaged in domestic violence against the mother in their presence, including threatening to slit the mother's throat and telling them to "say goodbye to her."

---

[1] The petitioner appears by counsel Andrew C. Cook. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Stephanie Shepherd appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner is the former stepfather of V.A.-B. and V.P. and the biological father of A.B. and S.C.

At an adjudicatory hearing in January 2025, the forensic interviewers who conducted the children's CAC interviews testified to the disclosures alleged in the petition. The interviewers also testified regarding the interviews of S.C. and A.B.,[4] who also disclosed excessive physical discipline and domestic violence, and recordings of all four children's CAC interviews were admitted into evidence over the petitioner's objection. A West Virgina State Police trooper testified regarding her investigation of the allegations, and the court took judicial notice of the pending felony proceedings against the petitioner, without objection. Finally, the petitioner testified and admitted to committing domestic violence in the children's presence but denied engaging in excessive physical punishment, which he claimed the mother perpetrated. The petitioner did not testify regarding the sexual abuse allegations. Based upon the evidence, the court found that the petitioner exposed the children to domestic violence, engaged in excessive physical punishment, and sexually abused V.A.-B.. Accordingly, the court adjudicated the petitioner of abusing the children and found the petitioner's sexual abuse of V.A.-B. constituted aggravated circumstances.

At the final dispositional hearing in July 2025, the DHS and the guardian requested termination of the petitioner's parental and custodial rights to the children. A Child Protective Services ("CPS") worker testified that, due to the petitioner's sexual abuse of V.A.-B. and the significant history of domestic violence in the home, there were no services that the DHS could provide to the petitioner to remedy the conditions of abuse and that termination was in the children's best interests. Following this, the petitioner testified that he received services from the United States Department of Veterans Affairs between 2020 and 2023 for substance abuse and post-traumatic stress disorder. The petitioner further testified that he was placed under supervised probation following a 2022 conviction for domestic battery and was required to complete "advanced anger management" services. At the close of testimony, the petitioner moved for a disposition pursuant to West Virginia Code § 49-4-604(c)(5) instead of termination of his parental and custodial rights. Ultimately, the court found that the previous finding of aggravated circumstances relieved the DHS of its obligation to provide services to the petitioner and that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse in the near future. The court further found that allowing the petitioner to retain his rights would be contrary to the children's best interests and that termination was necessary due to the findings of sexual abuse and history of domestic violence. Accordingly, the court entered an order terminating the petitioner's parental and custodial rights to the children. It is from this order that the petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating his parental rights instead of granting him a less restrictive

---

[4] At the time of the interviews, S.C. and A.B. were seven and ten years old, respectively.

[5] The permanency plan for V.P. and A.B. is to remain with their nonabusing mother. S.C.'s mother is deceased, and her permanency plan is adoption in her current placement. V.A.-B. has reached the age of majority.

alternative.[6] This Court has consistently held that an abusing parent's rights may be terminated "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). West Virginia Code § 49-4-604(d) provides there is "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" where "the abusing adult . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help," before providing a list of circumstances exemplifying where such a finding may be made. One such situation is where the abusing parent has "sexually abused . . . the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems." *Id.* § 604(d)(5). The petitioner argues that this language required the circuit court to consider whether he would benefit from additional services and that his participation in pre-petition services demonstrated that he would be able to correct the issues of abuse in the future. However, the petitioner's argument ignores the court's adjudicatory finding that his sexual abuse of V.A.-B. constituted aggravated circumstances. This finding relieved the DHS of its obligation "to make reasonable efforts to preserve the family" in the present matter. *See id.* § 49-4-604(c)(7). Further, while the petitioner testified that he successfully participated in pre-petition services, these services were in place during the very period that he was found to have engaged in the abusive conduct and were in no way related to the allegations of sexual abuse. Accordingly, the record contains sufficient evidence to support the circuit court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse in the near future. Moreover, the court found that the children's best interests required termination of the petitioner's rights, a finding he does not challenge. As such, we conclude that the circuit court did not err in terminating the petitioner's parental and custodial rights. *See id.* § 604(c)(6) (allowing termination of parental and custodial rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect . . . can be substantially corrected in the near future and, when necessary for the welfare of the child").

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 8, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED:** June 1, 2026

---

[6] We note that the petitioner's assignment of error asserts that he should have received a disposition pursuant to West Virginia Code § 49-4-604(c)(5). However, this Court has repeatedly stated that a disposition under section 604(c)(5) "specifically does not encompass when a child is with a non-offending parent—only when a child is temporarily placed with a guardian or the DHS." *In re H.B.*, 252 W. Va. 350, 361 n.18, 922 S.E.2d 350, --- n.18 (2025). Here, children V.P. and A.B. are in the custody of their nonabusing mother.

3

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III